# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00125-CR

**Keith Allen Hooper, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT
### NO. CR5922, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Keith Allen Hooper of aggravated assault and retaliation. *See* Tex. Penal Code Ann. §§ 22.02, 36.06 (West Supp. 2008). The district court sentenced him to forty years in prison. Hooper argues that the district court erred in denying his motion for new trial and motion for continuance based on inadequate time to prepare for trial and in admitting certain exhibits. Hooper also challenges the sufficiency of the evidence to support the conviction. We affirm the judgment of conviction.

Hooper was involved in a dating relationship with Amanda Mayes and, at times, had lived with Mayes. On May 7, 2007, Mayes's sister, Georgia Walden, was at Mayes's house. Hooper showed up at the house looking for Mayes. When Walden told Hooper that her sister was out, Hooper pointed a pistol at Walden several times and then pointed the pistol at the wall and pulled the trigger. Rather than firing, the gun made a clicking sound. Hooper then put the gun

in the vehicle in which he had arrived, driven by Tory Ivy, and told Ivy to leave. In the meantime, Mayes had returned. When Mayes confronted Hooper, he told her that "it was just a pellet gun."

Based on a description of the vehicle and a license plate number, officers eventually located and stopped the vehicle. At some point, Ivy attempted to get rid of the gun, but officers spotted and recovered the gun from a bush next to the stopped vehicle.

Hooper was arrested and cuffed. While Investigator Holloway was making arrangements for Hooper to be transported, Hooper "made a gesture toward [Holloway] as if the right hand was a gun, and dropped a thumb like a hammer falling on a revolver." Later, when Holloway was interviewing Hooper at the hospital,[1] Hooper told Holloway that if Holloway charged him with aggravated assault, Holloway "wouldn't be anything in 30 days, nor would [Holloway's] wife be anything in 30 days." Holloway also testified that Hooper "indicated to me as being a member of the Aryan brotherhood, he could make a phone call and have people, or peoples, deal with me and my wife."

On August 2, 2007, Hooper was indicted for aggravated assault and retaliation. On October 30, 2007, Hooper was convicted as charged by a jury and, the next day, was sentenced to forty years in prison and assessed a $5,000 fine by the district court.

Hooper argues that his due process rights were violated when, as part of the police department's routine operations, the videotape recorded at the scene of the initial arrest was reused and thereby erased. On the morning of trial, in response to defense counsel's questioning,

_____

[1] At some point during the initial confrontation, Hooper suffered a seizure and was taken to the hospital for examination.

2

Officer Hallmark, who had questioned Hooper at the time of the initial arrest, indicated that he "believe[d] [his] lights and camera were on." As to the videotape, the prosecutor further indicated: "I don't have it, either. I don't plan on putting it into evidence." However, because it was as yet unknown whether the videotape still existed, Hallmark agreed to search for the tape later that day. It was eventually discovered that, in accordance with policy providing for a 90-day retention period in the absence of a specific request to retain, the tape had been erased.

According to Hooper, however, the tape could have contained exculpatory evidence, and we should "presume" that the evidence on the tape was exculpatory "due to the fact that the evidence was not brought forward by the police who can be expected to bring all inculpatory evidence to the attention of the prosecution." Specifically, Hooper argues that the evidence was relevant and exculpatory in that:

> Appellant rigorously protested his innocence [sic] on the tape, gave an explanation which was consistent with the facts and which was not investigated by the officers, and repeatedly requested that investigation by asking officers to check for his fingerprints on the weapon which they had found, State's Exhibit 1, which would form the basis of the prosecution.

He contends that the videotape was essential to the defense as showing "a genuinely alarmed client denying [knowledge or ownership of] the gun."

In certain circumstances, the State's loss or destruction of potentially exculpatory evidence may violate a defendant's due process rights. *See Arizona v. Youngblood*, 488 U.S. 51, 56-59 (1988); *California v. Trombetta*, 467 U.S. 479, 486-91 (1984). To prevail on such a claim, a defendant must show both bad faith on the part of the State, *Youngblood*, 488 U.S. at 57,

3

and materiality—that the missing evidence had an exculpatory value that was evident before its destruction, and that the defendant would be unable to obtain comparable evidence by reasonable means. *Trombetta*, 467 U.S. at 489. A showing that lost evidence might have been favorable does not satisfy the materiality standard. *Jackson v. State*, 50 S.W.3d 579, 588-89 (Tex. App.—Fort Worth 2001, pet. ref'd).

Hooper has failed to meet his burden under both *Trombetta* and *Youngblood*. He has presented no evidence—beyond his bare assertions—that the State acted in bad faith in destroying the videotape. Rather, the evidence indicates that the State had no knowledge of the tape and that the tape had been erased as part of a regular retention schedule. In addition, Hooper does not explain why the tape was necessary, given that all witnesses agreed as to the substance of the initial interrogation with few differences. In fact, Hooper notes in his brief that:

> At no time did any witness for the State dispute Appellant's version of what took place during that recorded transaction. Hallmark and Holloway disagreed on whether Holloway was present, but neither disputed Appellant's statements as to what had occurred.

Although Hooper also notes that the recording was "entirely consistent with his trial position," he argues that the videotape corroboration "would have demonstrated the truth of his statements that he did not use the weapon and that the weapon which was identified as that which he used was not one over which he had exercised control." Thus, even according to Hooper, any evidence shown on the tape would merely be duplicative of the undisputed evidence offered at trial.

The State has no duty to preserve potentially exculpatory evidence in any particular manner and, therefore, is not obligated to create documentary evidence, including tape or

4

video recordings, of its conversations with the defendant. *San Miguel v. State*, 864 S.W.2d 493, 495 (Tex. Crim. App. 1993). Here, although Hooper's initial confrontation with police was recorded as a routine matter, there is no dispute as to the substance of what happened or what was said at that confrontation. Since the tape contained nothing beyond what had already been presented through undisputed testimony at trial, the State's erasing the tape in the course of its routine record-keeping operations did not violate Hooper's due process rights. Accordingly, we overrule this point of error.

By two points of error, Hooper argues that the district court erred in denying his motion for new trial and for continuance, as trial counsel had inadequate time to prepare his defense. According to Hooper:

> Appellant's counsel had been clearly notified that the case would not be tried on the date it actually did go to trial. Instead, he was told, and evidence adduced at the hearing on the motion for new trial plainly supports his statement, that the trial would be set off until some three or more weeks in the future. It was not until the Thursday or Friday before the Monday trial that counsel was told that trial would immediately follow the weekend.

The district court denied Hooper's motion for continuance.

The decision to grant or deny a motion for continuance lies in the sound discretion of the trial court. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995). An abuse of discretion may be found where denial of a motion for continuance has resulted in representation by counsel who is not prepared. *Id.* To find an abuse of discretion in refusing to grant a motion for continuance based on inadequate preparation, there must be a showing that the defendant was prejudiced by his counsel's inadequate preparation time. *Hernandez v. State*, 643 S.W.2d 397, 399-400 (Tex. Crim. App. 1983).

5

Defense counsel was appointed in September 2007, and trial was initially set for October 29, 2007, with pretrial matters to be addressed on October 18, 2007. On October 18, 2007, defense counsel sought a continuance, explaining that, although the "state refuse[d] to give a settlement offer," the parties had been in ongoing negotiations and, therefore, defense counsel had not filed pretrial motions until the day of the hearing. *See* Tex. Code Crim. Proc. Ann. art. 28.01 (West 2006). In addition, defense counsel noted the need for further expert evaluation on issues of Hooper's mental health and competency before trial commenced.

Defense counsel argues that, although the court made no formal ruling at the time of the hearing, defense counsel believed that his motion for continuance had been granted. However, the record indicates that the parties and the court understood that "[i]f there's no evidence [of incompetency], then we just go to trial." No formal order was issued, but in the later order on Hooper's motion for new trial, the court's findings of fact included the following: "Trial counsel's belief based on the October 18 proceedings that the matter would not go to trial was reasonable notwithstanding the lack of a ruling on the Motion for Continuance."

Based on these circumstances, defense counsel believed that Hooper's case had been moved to a mid-November status docket. The results of the psychological evaluation report, however, indicated that Hooper was fit to stand trial and were set out in a report dated October 22. On the same day, October 22, the court coordinator prepared a new notice of trial setting, reassigning the case for jury trial on October 29. On October 23, the notice of trial setting was filed with the clerk's office. Because defense counsel was in another county to observe the trial of a co-defendant of another of his clients, he was unaware of the new trial setting until October 24 or 25. Thus, when

6

defense counsel appeared with Hooper for trial on October 29, defense counsel reurged his motion for continuance. While recognizing that defense counsel had "been busy," the court stated that it could not "see this case changing" and directed the parties to proceed.

As required under *Hernandez*, Hooper has cited to several specific problems caused by inadequate preparation time, including insufficient time to confer with counsel about the decision to testify and insufficient time to obtain appropriate clothing. *See* 643 S.W.2d at 399-400. Hooper also contends that the State's revelations about the existence of the videotape on the morning of trial rendered the denial of his motion for continuance an abuse of discretion.

Defense counsel indicated during trial that he had not had sufficient time to discuss Hooper's wish to testify and the implications of such testimony:

> My client has indicated to me that he wants to testify. I want to talk to him about it. I want to put it on the record and I want to ask him some questions, and that's the reason I wanted a little break because I really don't have any evidence other than that.

The record indicates, however, that the district court granted defense counsel time to confer with the defendant. The record reveals the following exchange:

| | |
|---|---|
| Defense counsel: | Keith, we had an opportunity, me and you anyway, to discuss whether or not you should testify in your defense in this case, right? |
| Hooper: | Yes, sir. |
| Defense counsel: | And you've had ample opportunity to talk to me about that, right? |
| Hooper: | Yes, sir. |

| | |
|---|---|
| Defense counsel: | And I've told you that I don't think you ought to, haven't I? |
| Hooper: | Yes, sir. |
| Defense counsel: | That it's against my better judgment for you to testify? |
| Hooper: | Yes, sir. |
| Defense counsel: | Okay. And you want to testify, correct? |
| Hooper: | I'd like to tell my side of the story, yes. |

Not only did Hooper indicate on the record that he had "ample opportunity" to discuss with defense counsel the question of whether to testify, but he ultimately opted to accept defense counsel's advice not to testify at the guilt/innocence phase.

Hooper also argues that the short trial notice left defense counsel insufficient time to counsel Hooper about—and to have Hooper obtain—appropriate clothing to hide a potentially prejudicial swastika tattoo on Hooper's neck. Obtaining appropriate clothing, however, is a matter that does not require significant preparation time, contrary to what Hooper suggests. Further, the record contains no evidence that the jury either saw or was influenced by the tattoo. Indeed, Hooper wore a collared shirt and sat on the left side of counsel at trial, outside of the direct view of the jury. Finally, as the district court explained in denying Hooper's motion for new trial:

> [P]unishment was before the Court and punishment is the mostly [sic] likely point at which such a tattoo might make a difference. It made no difference to the Court in assessing punishment.

On this record, we hold that Hooper has not made the required showing of specific prejudice from the denial of a continuance. There is no evidence that the recycled videotape

8

included anything beyond evidence duplicative of undisputed evidence already presented to the jury, that the jury saw or was influenced by Hooper's tattoo, or that Hooper was inadequately counseled about testifying at trial. In the absence of specific prejudice, Hooper's assertions amount to mere speculation that defense counsel would have done a better job if he was allowed more time to prepare. This type of speculation is insufficient to justify an appellate reversal of a case for a trial court's failure to grant a continuance. *See Heiselbetz*, 906 S.W.2d at 512 (bare assertion that counsel did not have enough time to interview potential witnesses does not alone establish prejudice). On this record, therefore, we are unable to conclude that the district court abused its discretion by denying Hooper's motion for a continuance. *See id.* Accordingly, we overrule these two points of error.[2]

In his fourth point of error, Hooper argues that the evidence to support his conviction for retaliation was legally insufficient. Hooper argues that there was no evidence the threats were made in Llano County and that the statements made by Hooper did not satisfy statutory requirements for retaliation.

In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex. Crim.

---

[2] Hooper also cites to the "ten day rule." *See, e.g.*, *Henson v. State*, 530 S.W.2d 584 (Tex. Crim. App. 1975). Although conceding that he had more than ten days to prepare in absolute terms, he argues that the rule is not absolute. Rather, according to Hooper, the inquiry is more appropriately "adequate preparation." As we have already concluded, however, defense counsel was adequately prepared, and nothing in the record indicates that Hooper was prejudiced by the district court's denial of his motion for continuance.

App. 2005).  The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose to believe or disbelieve any portion of the testimony.  *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  The jury may also draw reasonable inferences from basic facts to ultimate facts.  *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).  When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Hooper's first contention is that, as stated in the indictment, a required element of the offense was that it was committed in Llano County.  Venue in a criminal case need only be proved by a preponderance of the evidence, which may be direct or circumstantial.  Tex. Code Crim. Proc. Ann. art. 13.17 (West 2005); *Murphy v. State*, 112 S.W.3d 592, 604-05 (Tex. Crim. App. 2003); *Black v. State*, 645 S.W.2d 789, 790 (Tex. Crim. App. 1983).  It is presumed that venue is proven in the trial court unless the record affirmatively shows otherwise or venue was made an issue at trial. Tex. R. App. P. 44.2(c)(1).  The record does not indicate that Hooper disputed venue, nor did our review of the record reflect any objection to venue.  To the extent he seeks to rely on his plea of not guilty to raise the issue, he is incorrect.  *See Holdridge v. State*, 707 S.W.2d 18, 20-21 (Tex. Crim. App. 1986) (per curiam).  Because Hooper failed to dispute venue before the district court and the record does not affirmatively refute proper venue, we presume venue of the trial court proper.  *See* Tex. R. App. P. 44.2(c)(1).

10

Hooper further argues that the evidence was insufficient to satisfy the statutory requirements for retaliation. Section 36.06 of the penal code provides that a person commits the offense of retaliation if he:

> intentionally or knowingly harms or threatens to harm another by an unlawful act:
>
> (1)      in retaliation for or on account of the service or status of another as a:
>
>       (A)      public servant, witness, prospective witness, or informant; or
>
>       (B)      person who has reported or who the actor knows intends to report the occurrence of a crime; or
>
> (2)      to prevent or delay the service of another as a:
>
>       (A)      public servant, witness, prospective witness, or informant; or
>
>       (B)      person who has reported or who the actor knows intends to report the occurrence of a crime.

Tex. Penal Code Ann. § 36.06.

A central purpose of the statute is to encourage public servants to perform vital public duties without fear of retribution. *Doyle v. State*, 661 S.W.2d 726, 729 (Tex. Crim. App. 1983). The statute does not require that the threatened retaliatory harm be imminent, nor does it require that the actor actually intend to carry out his threat. *LeBleu v. State*, 192 S.W.3d 205, 209 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

The evidence shows that Hooper threatened Holloway twice, once as Holloway was making arrangements to transfer Hooper and again while Holloway was interviewing Hooper in the hospital. In the first instance, Hooper "made a gesture toward [Holloway] as if the right hand

11

was a gun, and dropped a thumb like a hammer falling on a revolver." Officer Hallmark also testified that, as part of the same instance, Hooper told Holloway that his days were numbered. Later, when Holloway was interviewing Hooper at the hospital, Hooper told Holloway that if Holloway charged him with aggravated assault, Holloway "wouldn't be anything in 30 days, nor would [Holloway's] wife be anything in 30 days." Holloway also testified that Hooper "indicated to me as being a member of the Aryan brotherhood, he could make a phone call and have people, or peoples, deal with me and my wife." Deputy Scroggins, who was present during the exchange, corroborated this testimony.

Hooper relies on *LeBleu* to distinguish the circumstances of his case. 192 S.W.3d 205. Unlike *LeBleu*, according to Hooper, "[t]here was no statement as to what would be done and it is therefore entirely speculative that the intended action would be harmful to Holloway." *LeBleu* is distinguishable, Hooper contends, because there:

> the evidence showed, in contrast to the case at bar, that the defendant made repeated threats to stuff dynamite into the mouth of the judge presiding over his family law matters as well as to kill his ex-wife, along with statements of his ability to do so, in each instance. These statements were found not to be "off-hand" statements made in anger and thus covered by the statute.

*Id.* at 210.

The inquiry is not, however, whether the actor actually intended to carry out the threats or had the means to do so, but whether the actor made the threats based on the person's role in carrying out his duties as a public servant. *See id.* Viewing the evidence in a light favorable to the verdict, there is sufficient evidence here, including the consistent testimony of three

12

peace officers, that Hooper threatened to cause harm to Holloway and to Holloway's family because of Holloway's carrying out his duties as a peace officer. The statute requires no more. Finding legally sufficient evidence of both retaliation and venue, we overrule Hooper's fourth point of error.

In his fifth point of error, Hooper challenges the admission of three exhibits showing prior convictions, arguing that the evidence presented by the State was insufficient to link Hooper to those offenses. To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921-22 (Tex. Crim. App. 1997). To link the defendant to prior convictions, there are no specific or exclusive means of proof. *Id.*; *Littles v. State*, 726 S.W.2d 26, 32 (Tex. Crim. App. 1984). Rather, the court is to consider the facts and circumstances of each case and to admit evidence where proof of identity is sufficient, even if "unorthodox." *Littles*, 726 S.W.2d at 32.

Hooper challenges the admission of State's Exhibits 4 and 5, certified records from the Williamson County Clerk's Office with regard to charges and convictions for the assault, theft, and unlawful use of a criminal instrument. He also challenges the admission of State's Exhibit 6, certified records from the Travis County Clerk's Office with regard to charges and conviction for theft by check and burglary of a vehicle. Although defense counsel objected to their admission at trial as inadmissible hearsay, certified court records, including certified copies of a judgment and sentence, are admissible under the rules of evidence. *See* Tex. R. Evid. 902(4).

Hooper argues, however, that even if admissible under Rule 902(4) as certified records, nothing introduced into evidence proves that those documents actually reference Hooper:

13

There are no photographs of anyone included in State's Exhibits 4, 5 and 6. There was no comparison between the included fingerprints in those exhibits and the known fingerprints of Appellant. To link Appellant to the crimes listed in State's Exhibits 4, 5 and 6, the State relied on States's Exhibit 3, a sixteen-page computer print-out certified to be the Texas Criminal History Record of one Keith Allen Hooper, bearing a certain Social Security number and date of birth, both of which, oddly enough, were never shown to be those of Appellant.

Exhibits 2 and 3 were also admitted over defense counsel's hearsay objection, but Hooper does not challenge their admission on appeal. Exhibit 2, a certified copy of Hooper's pen packets, includes photographs of Hooper and descriptions of Hooper's visible scars and tattoos, as well as Hooper's DPS identification number and date of birth. Through the photographs in Exhibit 2, the driver's license number and date of birth were shown to be those of the particular "Keith Allen Hooper" accused in this case. *See Littles*, 726 S.W.2d at 32. Exhibit 3, a certified copy of Hooper's criminal history, includes Hooper's DPS identification number and date of birth, as well as a 16-page criminal history. Exhibit 3 identifies Hooper by the same DPS identification number and date of birth as Exhibit 2. The three exhibits that Hooper challenges on appeal can be linked to this particular "Keith Allen Hooper" by the same identifying numbers found on Exhibits 2 and 3. Exhibit 4, the charge and judgment of conviction for assault of a family member, bears the same cause number as the same offense listed in Exhibit 3. Exhibit 5, the charge and judgment of conviction for unlawful use of a criminal instrument, can be linked to both Exhibits 2 and 3 by cause number and by Hooper's DPS identification number. In addition, the documents included in Exhibit 5 are also included in Exhibit 2, whose admission is not challenged on appeal. Exhibit 6, the charge and judgment of conviction for theft by check and burglary of a vehicle, can be linked

14

to both Exhibits 2 and 3 by cause number as well as by Hooper's DPS identification number and date of birth.

The challenged documents can be linked to this particular "Keith Allen Hooper" by reference to other exhibits, whose admission is not challenged on appeal. Accordingly, we overrule Hooper's fifth point of error.

Having overruled Hooper's points of error, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop;
    Concurring Opinion by Justice Patterson

Affirmed

Filed:   October 9, 2009

Do Not Publish