02-10-131-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00131-CR

 

 


 
 
 Farhia Haibe Gohe
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 371st
District Court OF Tarrant COUNTY

------------

MEMORANDUM
OPINION[1]

------------

I.  Introduction

         
Appellant Farhia Haibe Gohe appeals her conviction for the offense of
retaliation.  In two points, Gohe challenges the sufficiency of the
evidence to support the jury’s verdict.  We will affirm.

II.  Background

         
Gohe received two traffic tickets on July 6, 2008, in Dalworthington Gardens,
Texas.  The tickets were for failure to maintain financial responsibility
(no proof of insurance) and for not having a front headlight.  According
to the testimony of the city clerk, Sandra Ma, Gohe appeared at the
Dalworthington Gardens’s court office on July 14, 2008, and presented an
insurance policy with an effective date of July 7, 2008.  Ma said that
after Gohe presented her July 7, 2008 insurance policy, Gohe refused to sign an
affidavit saying that the policy that Gohe was giving the court was true and
correct.  Gohe returned on July 18, 2008, and requested to go before Judge
Suzanne Hudson.  Ma set a court date for Gohe to appear on August 20,
2008.

         
By Ma’s account, Gohe appeared on August 20, but Gohe became agitated with
Judge Hudson and refused to give a direct answer regarding whether she was pleading
guilty, no contest, or not guilty.  Ma testified that Judge Hudson warned
Gohe that she would be held in contempt of court if her behavior
continued.  Judge Hudson granted Gohe “a pass to September 3[,] 2008, to
have an attorney hired.”  On September 3, without an attorney, Gohe’s
behavior “was the same, and the [j]udge had to remind [Gohe again] that she
could be held in contempt if she did not follow court decorum.”  Judge
Hudson again granted Gohe an extension, and ordered Gohe to return October 1,
2008.  Gohe returned on October 1, 2008, without an attorney.  On
October 15, 2008, Gohe was given another pass to hire an attorney.  Gohe’s
uncooperative behavior continued, and she was “given a last pass to have an
attorney hired by November [5, 2008].”  Ma testified that Gohe’s demeanor
throughout her calls to the clerk’s office was “very argumentative [and v]ery
hostile.”  Gohe did not appear in court on November 5, 2008. 
Thereafter, according to Ma, “warrants were issued for [Gohe’s] arrest.” 
According to Ma, she received a phone call on November 13, 2008, concerning
Judge Hudson’s safety, prompting her to call Judge Hudson about a potential
threat.

         
Judge Hudson also testified at trial.  She averred that she had seen Gohe
in court multiple times and that, similarly to Ma’s testimony, Gohe’s behavior
was argumentative and angry.  Judge Hudson said that Gohe, while in the
courtroom, “would sigh and make noises and roll her eyes.”  At one point
Gohe “had some papers in her hands and was so loud that [the court’s] bailiff
had to [instruct Gohe] to be quiet a few times.”  Overall, Judge Hudson
described Gohe’s conduct as “rude and [Gohe] didn’t appear to try to behave the
way people do in public or in a court setting.  She was not respectful of
the other people in court or of myself.”  At some point, Judge Hudson told
Ma that she was “afraid and . . . uncomfortable being up there at the
bench without one of the bailiffs being up there when [Gohe] was up at the
bench.”

         
Jamal Qaddura, a legal assistant for a local attorney, also testified.
 According to Qaddura, Gohe came into his office on November 13, 2008,
seeking legal representation in connection with the two traffic tickets. 
While Gohe was still in the office, Qaddura called the court’s clerk and
discovered that Gohe had two active warrants.  When Qaddura informed Gohe
of the warrants, Gohe became very angry.  Gohe’s response to learning of
the warrants was “How dare the [j]udge do this to me.”  In fact, by
Qaddura’s account, Gohe was so angry she started to move about the office,
demonstratively using her hands in an “offensive manner.”  Qaddura
attempted to calm Gohe down, but Gohe remained “really angry . . .
[and she could not] even hold herself [calmly] while” Qaddura talked to her.

         
At some point in the conversation, Gohe told Qaddura that she was “going to
take matters in her own hands” and that she was “not afraid to go to
jail.”  Qaddura said that Gohe then told Qaddura that she was “going to go
take care of this judge.”  Qaddura said that he interpreted Gohe’s
comments to mean that she was intent on “harming the [j]udge.”  Because of
Gohe’s behavior and because Gohe left the office “angry,” Qaddura called the
court clerk and informed her that he believed that Gohe intended to assault
Judge Hudson.

         
A jury found Gohe guilty of retaliation and sentenced her to three years’
confinement with a recommendation that the sentence be suspended and that she
be placed on community supervision.  The trial court suspended Gohe’s
sentence and placed her on community supervision for five years and assessed
court costs against her.  This appeal followed.

III.  Discussion

         
In two points, Gohe argues that the evidence is legally and factually
insufficient to “prove the requisite intent for the offense of retaliation
against Judge [Hudson].”  In both points, Gohe contends only that the
evidence is insufficient to demonstrate she had the intent to threaten Judge
Hudson.  We disagree.

         
A.      Standard of Review

         
Although Gohe challenges the legal and factual sufficiency of the evidence, the
court of criminal appeals has held that there is no meaningful distinction
between the legal sufficiency standard and the factual sufficiency
standard.  Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App.
2010) (overruling Clewis v. State, 922 S.W.2d 126, 131–32 (Tex. Crim.
App. 1996)).  Thus, the Jackson standard, which is explained below,
is the “only standard that a reviewing court should apply in determining
whether the evidence is sufficient to support each element of a criminal
offense that the State is required to prove beyond a reasonable doubt.”  Id.

         
In our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

         
This standard gives full play to the responsibility of the trier of fact to
resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at
778.  The trier of fact is the sole judge of the weight and credibility of
the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon
1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert.
denied, 129 S. Ct. 2075 (2009).  Thus, when performing an
evidentiary sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the
factfinder.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim.
App. 2007).  Instead, we Adetermine whether the
necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).  We
must presume that the factfinder resolved any conflicting inferences in favor
of the prosecution and defer to that resolution.  Jackson, 443 U.S.
at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

         
The sufficiency of the evidence should be measured by the elements of the
offense as defined by the hypothetically correct jury charge for the case, not
the charge actually given.  Hardy v. State, 281 S.W.3d 414, 421
(Tex. Crim. App. 2009); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997).  Such a charge is one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.  Villarreal v. State, 286 S.W.3d
321, 327 (Tex. Crim. App.), cert. denied, 130 S. Ct. 515 (2009); Malik,
953 S.W.2d at 240.  But we may not affirm a conviction based on legal
or factual grounds that were not submitted to the jury.  Malik, 953
S.W.2d at 238 n.3.  The law as authorized by the indictment means the
statutory elements of the charged offense as modified by the factual details
and legal theories contained in the charging instrument.  See Curry v.
State, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

         
The standard of review is the same for direct and circumstantial evidence
cases; circumstantial evidence is as probative as direct evidence in
establishing the guilt of an actor.  Clayton, 235 S.W.3d at 778; Hooper,
214 S.W.3d at 13.  In determining the sufficiency of the evidence to show
an appellant=s intent, and faced with a record that
supports conflicting inferences, we Amust
presume—even if it does not affirmatively appear in the record—that the trier
of fact resolved any such conflict in favor of the prosecution, and must defer
to that resolution.@  Matson v. State,
819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

         
B.      Retaliation

         
The offense of retaliation is defined, in pertinent part, by the Texas Penal
Code as follows:

A person commits an
offense if he intentionally or knowingly harms or threatens to harm another by
an unlawful act:

 

(1) in retaliation for
or on account of the service or status of another as a:

 

(A) public servant,
witness, prospective witness, or informant.

 

Tex.
Penal Code Ann. § 36.06(a)(1)(A) (Vernon Supp. 2010).

         
One of the retaliation statute’s purposes is to encourage a “certain class of
citizens to perform vital public duties without fear of retribution.”  In
re B.P.H., 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.) (citing Doyle
v. State, 661 S.W.2d 726, 729 (Tex. Crim. App. 1983)).  A public
servant is defined as “a person elected, selected, appointed, employed, or
otherwise designated as one of the following, even if he has not yet qualified
for office or assumed his duties:  (A) an officer, employee, or agent
of government.”  Tex. Penal Code Ann. § 1.07(a)(41) (Vernon Supp.
2010).  The retaliation statute does not require the threatened
retaliatory harm be imminent, nor does it require that the actor actually
intend to carry out her threat.  B.P.H., 83 S.W.3d at 407; Coward
v. State, 931 S.W.2d 386, 389 (Tex. App.—Houston [14th Dist.] 1996, no
pet.).  Retaliation is a result-oriented offense, and the focus is on
whether the conduct is done with an intent to effect the result specified in
the statute.  B.P.H., 83 S.W.3d at 407; Herrera v. State,
915 S.W.2d 94, 98 (Tex. App.—San Antonio 1996, no pet.).  Retaliatory
intent may be inferred from an accused’s acts, words, or conduct.  Dues
v. State, 634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982); B.P.H.,
83 S.W.3d at 407.

         
In this case, Gohe does not dispute that she made the statements that Qaddura
testified she made.  Gohe contends only that the evidence does not show
that she intended to retaliate against Judge Hudson.  But viewing the
evidence in the light most favorable to the prosecution, the evidence shows
that Gohe had been argumentative with Judge Hudson on numerous occasions in the
courtroom, so much so that Judge Hudson feared her at the bench unless a
bailiff was near.  And immediately after learning that warrants had been
issued for her, Gohe told Qaddura that she intended to “take care of this
judge,” that she was “going to take matters in her own hands,” and that “she
was not afraid to go to jail.”  Her comments startled Qaddura enough that
he felt it necessary to call the court’s clerk and inform her that a threat had
been made against Judge Hudson.  Qaddura testified that he believed Gohe
intended to harm Judge Hudson.

         
Based on the combined and cumulative force of all the evidence and testimony,
we conclude that the evidence was sufficient to allow the jury to reasonably
infer that Gohe intended to threaten Judge Hudson.  We hold that the
evidence is sufficient to support the jury’s verdict that Gohe intentionally
threatened harm to Judge Hudson as retaliation for Judge Hudson’s issuing
warrants against Gohe.  See Lebleu v. State, 192 S.W.3d 205, 209–10
(Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (holding that testimony by
witnesses that defendant threatened witness sufficient to support charge of
retaliation); Clayton, 235 S.W.3d at 778; Hooper, 214 S.W.3d at
13.  We therefore overrule both of Gohe’s points on appeal.

IV.  Conclusion

         
Having overruled both of Gohe’s points, we affirm the trial court’s judgment.

 

PER CURIAM

 

PANEL:  MEIER, GARDNER, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
April 14, 2011














[1]See Tex. R. App. P. 47.4.