

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-10-00131-CR**

FARHIA HAIBE GOHE                                    APPELLANT

V.

THE STATE OF TEXAS                                           STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Farhia Haibe Gohe appeals her conviction for the offense of retaliation. In two points, Gohe challenges the sufficiency of the evidence to support the jury's verdict. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Gohe received two traffic tickets on July 6, 2008, in Dalworthington Gardens, Texas. The tickets were for failure to maintain financial responsibility (no proof of insurance) and for not having a front headlight. According to the testimony of the city clerk, Sandra Ma, Gohe appeared at the Dalworthington Gardens's court office on July 14, 2008, and presented an insurance policy with an effective date of July 7, 2008. Ma said that after Gohe presented her July 7, 2008 insurance policy, Gohe refused to sign an affidavit saying that the policy that Gohe was giving the court was true and correct. Gohe returned on July 18, 2008, and requested to go before Judge Suzanne Hudson. Ma set a court date for Gohe to appear on August 20, 2008.

By Ma's account, Gohe appeared on August 20, but Gohe became agitated with Judge Hudson and refused to give a direct answer regarding whether she was pleading guilty, no contest, or not guilty. Ma testified that Judge Hudson warned Gohe that she would be held in contempt of court if her behavior continued. Judge Hudson granted Gohe "a pass to September 3[,] 2008, to have an attorney hired." On September 3, without an attorney, Gohe's behavior "was the same, and the [j]udge had to remind [Gohe again] that she could be held in contempt if she did not follow court decorum." Judge Hudson again granted Gohe an extension, and ordered Gohe to return October 1, 2008. Gohe returned on October 1, 2008, without an attorney. On October 15, 2008, Gohe was given another pass to hire an attorney. Gohe's uncooperative behavior continued, and

2

she was "given a last pass to have an attorney hired by November [5, 2008]." Ma testified that Gohe's demeanor throughout her calls to the clerk's office was "very argumentative [and v]ery hostile." Gohe did not appear in court on November 5, 2008. Thereafter, according to Ma, "warrants were issued for [Gohe's] arrest." According to Ma, she received a phone call on November 13, 2008, concerning Judge Hudson's safety, prompting her to call Judge Hudson about a potential threat.

Judge Hudson also testified at trial. She averred that she had seen Gohe in court multiple times and that, similarly to Ma's testimony, Gohe's behavior was argumentative and angry. Judge Hudson said that Gohe, while in the courtroom, "would sigh and make noises and roll her eyes." At one point Gohe "had some papers in her hands and was so loud that [the court's] bailiff had to [instruct Gohe] to be quiet a few times." Overall, Judge Hudson described Gohe's conduct as "rude and [Gohe] didn't appear to try to behave the way people do in public or in a court setting. She was not respectful of the other people in court or of myself." At some point, Judge Hudson told Ma that she was "afraid and . . . uncomfortable being up there at the bench without one of the bailiffs being up there when [Gohe] was up at the bench."

Jamal Qaddura, a legal assistant for a local attorney, also testified. According to Qaddura, Gohe came into his office on November 13, 2008, seeking legal representation in connection with the two traffic tickets. While Gohe was still in the office, Qaddura called the court's clerk and discovered that

3

Gohe had two active warrants. When Qaddura informed Gohe of the warrants, Gohe became very angry. Gohe's response to learning of the warrants was "How dare the [j]udge do this to me." In fact, by Qaddura's account, Gohe was so angry she started to move about the office, demonstratively using her hands in an "offensive manner." Qaddura attempted to calm Gohe down, but Gohe remained "really angry . . . [and she could not] even hold herself [calmly] while" Qaddura talked to her.

At some point in the conversation, Gohe told Qaddura that she was "going to take matters in her own hands" and that she was "not afraid to go to jail." Qaddura said that Gohe then told Qaddura that she was "going to go take care of this judge." Qaddura said that he interpreted Gohe's comments to mean that she was intent on "harming the [j]udge." Because of Gohe's behavior and because Gohe left the office "angry," Qaddura called the court clerk and informed her that he believed that Gohe intended to assault Judge Hudson.

A jury found Gohe guilty of retaliation and sentenced her to three years' confinement with a recommendation that the sentence be suspended and that she be placed on community supervision. The trial court suspended Gohe's sentence and placed her on community supervision for five years and assessed court costs against her. This appeal followed.

### III. DISCUSSION

In two points, Gohe argues that the evidence is legally and factually insufficient to "prove the requisite intent for the offense of retaliation against

4

Judge [Hudson]." In both points, Gohe contends only that the evidence is insufficient to demonstrate she had the intent to threaten Judge Hudson. We disagree.

### A. Standard of Review

Although Gohe challenges the legal and factual sufficiency of the evidence, the court of criminal appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). Thus, the *Jackson* standard, which is explained below, is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.*

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct.

5

at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 515 (2009); *Malik,* 953 S.W.2d at 240. But we may not affirm a conviction based on

legal or factual grounds that were not submitted to the jury. *Malik*, 953 S.W.2d at 238 n.3. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13. In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

### B.  Retaliation

The offense of retaliation is defined, in pertinent part, by the Texas Penal Code as follows:

> A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act:
>
> (1) in retaliation for or on account of the service or status of another as a:
>
> (A) public servant, witness, prospective witness, or informant.

Tex. Penal Code Ann. § 36.06(a)(1)(A) (Vernon Supp. 2010).

7

One of the retaliation statute's purposes is to encourage a "certain class of citizens to perform vital public duties without fear of retribution." *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.) (citing *Doyle v. State*, 661 S.W.2d 726, 729 (Tex. Crim. App. 1983)).  A public servant is defined as "a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties: (A) an officer, employee, or agent of government."  Tex. Penal Code Ann. § 1.07(a)(41) (Vernon Supp. 2010).  The retaliation statute does not require the threatened retaliatory harm be imminent, nor does it require that the actor actually intend to carry out her threat.  *B.P.H.*, 83 S.W.3d at 407; *Coward v. State*, 931 S.W.2d 386, 389 (Tex. App.—Houston [14th Dist.] 1996, no pet.).  Retaliation is a result-oriented offense, and the focus is on whether the conduct is done with an intent to effect the result specified in the statute.  *B.P.H.*, 83 S.W.3d at 407; *Herrera v. State*, 915 S.W.2d 94, 98 (Tex. App.—San Antonio 1996, no pet.).  Retaliatory intent may be inferred from an accused's acts, words, or conduct.  *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982); *B.P.H.*, 83 S.W.3d at 407.

In this case, Gohe does not dispute that she made the statements that Qaddura testified she made.  Gohe contends only that the evidence does not show that she intended to retaliate against Judge Hudson.  But viewing the evidence in the light most favorable to the prosecution, the evidence shows that Gohe had been argumentative with Judge Hudson on numerous occasions in the

8

courtroom, so much so that Judge Hudson feared her at the bench unless a bailiff was near. And immediately after learning that warrants had been issued for her, Gohe told Qaddura that she intended to "take care of this judge," that she was "going to take matters in her own hands," and that "she was not afraid to go to jail." Her comments startled Qaddura enough that he felt it necessary to call the court's clerk and inform her that a threat had been made against Judge Hudson. Qaddura testified that he believed Gohe intended to harm Judge Hudson.

Based on the combined and cumulative force of all the evidence and testimony, we conclude that the evidence was sufficient to allow the jury to reasonably infer that Gohe intended to threaten Judge Hudson. We hold that the evidence is sufficient to support the jury's verdict that Gohe intentionally threatened harm to Judge Hudson as retaliation for Judge Hudson's issuing warrants against Gohe. *See Lebleu v. State*, 192 S.W.3d 205, 209–10 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (holding that testimony by witnesses that defendant threatened witness sufficient to support charge of retaliation); *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13. We therefore overrule both of Gohe's points on appeal.

## IV. Conclusion

Having overruled both of Gohe's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MEIER, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 14, 2011