Simeon **LEBLEU**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–05–00351–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 30, 2006.

Rehearing Overruled May 18, 2006.

---

Cary Marshall Faden, SugarLand, for appellants.

David Bosserman, Angleton, for appellees.

Panel consists of Justices HUDSON, FOWLER, and SEYMORE.

## OPINION

WANDA McKEE FOWLER, Justice.

A grand jury indicted Simeon Lebleu, appellant, on four counts of retaliation. Three counts were for threats made against Judge K. Randall Hufstetler due to his service as judge of the 300th District Court of Brazoria County, and one count was for a threat made against Loretta Marion, appellant's ex-wife, for her service as a witness in Brazoria County in a family matter between appellant and Ms. Marion. A jury convicted appellant of one count of retaliation against Judge Hufstetler, and one count of retaliation against Ms. Marion. It found appellant not guilty on the other two counts. Appellant was sentenced on one count to ten years' imprison-ment with no fine, and on the other count to ten years' probated imprisonment with a $5,000 fine. Appellant raises three issues: (1) the evidence was legally insufficient to sustain his conviction; (2) the evidence was factually insufficient to sustain his conviction; and (3) the trial court should have quashed the indictment for lack of venue. We affirm.

## Factual and Procedural Background

Simeon Lebleu and Loretta Marion were married for over ten years. They had one child, a daughter. After years of marital problems, Ms. Marion decided to divorce appellant. After their divorce, the two continued to appear before the district court in Brazoria County regarding various matters such as adjustments to child support, protective orders, and eventually termination of appellant's parental rights. Judge K. Randall Hufstetler presided over many of these matters, and Ms. Marion appeared as a witness as well. During hearings held in 2003, appellant was living in Louisiana, and Ms. Marion was living in Brazoria County.

On April 24, 2003, Judge Hufstetler held a hearing on Ms. Marion's application for a protective order against appellant, as well as a motion to modify support. Judge Hufstetler granted the application and modified support. On September 30, 2003, Judge Hufstetler entered a final order terminating appellant's parental rights—an issue evidently raised previously, but not ruled on at the April hearing. Appellant was upset about the April hearing's outcome.

In May 2003, appellant called the Texas State Commission on Judicial Conduct, located in Travis County. Ronald Bennett, the Commission's chief investigator, returned appellant's phone call. During that conversation, Mr. Bennett explained the

process of filing a formal complaint against a Texas state judge and that he could not alter a judicial ruling; his function was to investigate judicial misconduct. Appellant was not satisfied with this procedure, as he believed it was not a proper check on judges' conduct on the bench. Appellant became more agitated during the conversation and ultimately, according to Bennett, said words to the effect that "maybe he should just put a stick of dynamite in [Judge Hufstetler's] mouth and let the judge see what it's like to have somebody control your life." After Bennett tried to calm him down and explain that appellant's threats would not improve the situation, appellant said something along the lines of, "Well, it's too late. It's already in the works," and "Just watch the news tonight." Those threats comprised count one, for which appellant was convicted and received ten years' imprisonment and no fine.[1] The State introduced evidence of other threats as well, but the jury returned a verdict of not guilty on those counts.

The other threat for which appellant was convicted was made against Ms. Marion, appellant's ex-wife. While in the Brazoria County jail, appellant spent part of his time in an eight-man tank. Another inmate, Leroy Ecby, also lived in that tank. Ecby reported that appellant made statements about hiring someone to kill Ms. Marion. Appellant was angry with Ms. Marion because of her role in the family court matter. The jury convicted appellant of retaliation, and he received a ten-year probated sentence and a $5,000 fine.

Appellant presented witnesses who testified that he was emotionally unstable. They also testified about the veracity of the State's witnesses, appellant's commitment to a mental ward at a Louisiana hospital, and his flare for dramatic "extreme" speech, even when he had no intent to actually follow through with a threat. Among appellant's witnesses were other inmates at the Brazoria County jail who testified about Ecby's motives to testify against appellant, and that appellant was never serious when he engaged in "tank talk."

The jury ultimately believed Bennett and Ecby's testimony,[2] and found that appellant did in fact threaten to retaliate against Judge Hufstetler and Ms. Marion based upon their service as a judge and witness respectively. The trial court entered the sentence and terms of probation. Appellant timely filed notice of appeal. We affirm.

## Analysis

### I. Legal Sufficiency

In a legal-sufficiency challenge, we employ the familiar standard of viewing the evidence in the light most favorable to the verdict. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000). If any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, we will affirm. *Id.* We will not re-weigh the evidence and substitute our judgment for that of the jury. *Id.* Here, because there was direct testimony from witnesses who actually heard appellant make the threats, the evidence is legally sufficient.

1. Judge Robert May presided over appellant's criminal case. Judge Hufstetler was only a witness in the criminal case.

2. The State and appellant both presented much more evidence than outlined here. We give an abbreviated version of the facts be-

cause the jury convicted of only two counts of retaliation and thus only some of the testimony is relevant to our sufficiency discussion. We will add other facts as necessary in our analysis.

The elements of retaliation are (1) intentionally or knowingly, (2) threatening, (3) to harm another, (4) by an unlawful act, (5) in retaliation for or on account of the service or status of another, (6) as a public servant, witness, prospective witness, or informant. . . . *See* TEX. PEN.CODE § 36.06(a). The State had to produce sufficient evidence for each of these elements. It is important to note now that the elements do not require that appellant intend to carry out the threat, take any affirmative steps to carry out the threat, or even that appellant issue the threat directly to the public servant or witness.

## A. Conviction for Threat Against Judge Hufstetler

■ To meet its burden, the State adduced evidence that appellant did not simply make one off-hand comment about putting dynamite in Judge Hufstetler's mouth, but rather did so repeatedly. Also, witnesses testified appellant fixated on Judge Hufstetler and thought of various ways in which he could physically harm the judge.[3] This evidence showed that appellant intentionally and knowingly made these threats of harm, which would be unlawful acts. However, that is only part of the State's burden. The State also had to prove that the threats were made in retaliation for Judge Hufstetler's service as a public servant.

To prove these elements, the State produced evidence that appellant made the threats because of Judge Hufstetler's role as judge in appellant's family law case. Appellant's threats were an outgrowth of his extreme dissatisfaction with Judge Hufstetler's rulings. Evidently, he be-

lieved the judge had acted contrary to what the law required. Because he thought Judge Hufstetler was controlling his life without regard for the law, appellant threatened to put dynamite down the judge's throat to show the judge how it felt to have someone control his life. Judge Hufstetler would not have presided over the family law matters but for his role as a public servant in Brazoria County. Thus, we conclude that appellant uttered his threats in retaliation for Judge Hufstetler's role and service as a judge. The State's evidence was legally sufficient for each element.

## B. Conviction for Threat Against Loretta Marion

■ The elements the State needed to prove for the threat against Ms. Marion are the same as those for Judge Hufstetler, except that it was Ms. Marion's service as a witness, not public servant, that led to the threat against her. The State presented evidence to show that appellant did not make off-hand, one-time statements in anger regarding Ms. Marion. As with the threats against Judge Hufstetler, these were not comments made in a vacuum, much less immediately after a ruling, and then never uttered again. Appellant fixated on his former wife, her actions in the family law matter, and how he could harm her. Appellant even took the opportunity—as recorded by his then-wife, Tomorro—to insist he was serious about his threats to kill her.

Testimony indicated that appellant spent considerable time talking about the family law matter while in county jail. Although appellant evidently made more unrealistic,

3. Appellant also made more unrealistic, uncharged threats against Judge Hufstetler, such as dipping a blow dart in cyanide and using it to kill the judge, having someone push appellant in front of the judge's car to make it appear the judge harbored bias and anger toward appellant, and to erect a billboard accusing the judge of various judicial misconduct. These, while not proof of the threat in the indictment, also go to prove intent.

uncharged threats, such as pouring 100% peroxide on his former wife, he was indicted for threatening to hire someone to kill her. Ecby testified that appellant was seriously inquiring about finding someone to kill Ms. Marion. Regardless of whether appellant followed through with the threat or not, the evidence supports the finding that he intentionally and knowingly issued a threat to harm Ms. Marion in an unlawful way. It remained for the State to prove that the threat was directly related to Ms. Marion's service as a witness in Brazoria County.

We conclude the State adduced sufficient evidence to show that appellant's motive in threatening Ms. Marion on this occasion was for her role in the family law matter. Specifically, he threatened her because of her testimony and court filings against him in seeking termination of his parental rights, modification of child support, and a protective order. The State's evidence came from Ecby and others in the tank who heard appellant discuss his case at length, and explain how upset his ex-wife's actions made him. Those actions were directly tied to her role as witness in that matter in seeking certain relief.

### C. Summary

The evidence was legally sufficient. Viewed in the light most favorable to the verdict, the witnesses' testimony proved each element of the offense. The State presented evidence showing more than a mere threat. There was additional evidence that appellant had initiated a plan to fulfill his threats. We overrule appellant's first issue as to both convictions.

### II. Factual Sufficiency

Appellant also raises the issue of factual sufficiency. When conducting a factual sufficiency review, we view the evidence in a neutral light and will set the verdict aside only if the evidence is so weak as to make the verdict clearly wrong and manifestly unjust, or if the contrary evidence is so strong that the standard of proof, beyond a reasonable doubt, could not have been met. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App.2004). While we have reviewed the entire record and have considered all evidence presented at trial, we cannot re-weigh the evidence and supplant the role of the jury to resolve conflicts in testimony and evaluate witness credibility. *See Zuniga v. State*, 144 S.W.3d 477, 482 (Tex.Crim.App.2004) (stating that appellate courts are not to "find" facts or substitute their judgment for that of the jury). As we detail below, the evidence is factually sufficient as well.

### A. Threat Against Judge Hufstetler

#### 1. Appellant's argument about intent

The evidence in this case revolves significantly around witness credibility—specifically, what appellant intended to convey by his words. He challenged the State's evidence, contending his statements could be considered ambiguous rather than threatening—instead of saying he would put dynamite in the judge's mouth, he said "maybe" he "should" do so. Additionally, appellant attempted to prove that he was speaking only in the hypothetical regarding Judge Hufstetler. Other statements about "watch[ing] the news," and "it's too late" concerned potentially-suicidal thoughts on his part unrelated to any threat. Testimony indicated he told his sister he would not hurt anyone. Of course, these statements must be compared with the tape recording of a conversation with Tomorro during which he insisted he was serious about killing Ms. Marion. Another theory appellant offered was that he might have meant it was too late to alter the family court outcome, as there was a final order in that case.

Again, the purpose of this testimony was to show that appellant's words could have carried any number of meanings.

Appellant also presented testimony from witnesses that he routinely threatened other people—actually strengthening the case to show his intent to threaten. While he never actually carried out a threat, his witnesses consistently testified he was a "pop off," who often made dramatic statements and threats. Appellant's evidence does not invalidate the conviction. At most, it provides competing theories as to the meaning of words and, thus, intent to threaten. The jury's role was to evaluate the evidence and determine if appellant had the intent to threaten, and ample evidence supports its finding that appellant had the intent to threaten.

### 2. Appellant's defensive theories

■■■ The crime of retaliation does not require an intent to follow through with a threat. It is not an element of the crime. So long as a person issues a threat, knowingly and intentionally, and for the reasons set out in the statute, then she is guilty of the crime. Appellant's witnesses did not contradict any element; certainly, their testimony was not so strong that the standard of proof could not be met. When reduced to its essence, appellant's case was two-fold: (1) he was emotionally unstable and upset and therefore should not be convicted for his rash statements, and (2) he constantly makes threats, but because he never intends to carry them out, his conviction is not sound. Both of these arguments are flawed.

First, appellant did not raise an insanity defense. What he argued—emotional instability—is not a valid defense and does not exculpate him. Perhaps emotional instability would negate intent to carry out a threat, or explain why he issued a threat, yet it does not vitiate his intent to threaten. Indeed, it appears appellant was so agitated and upset that he clearly meant to express himself through a threat.

Second, looking at appellant's other theory further supports our reasoning. Again, the statute does not address the intent to carry out the threat. Appellant's own witnesses testified that appellant has a certain panache for threatening others. Regardless of whether he intended to proceed with the threatened action, appellant's witnesses added credibility to the State's case that he knowingly and intentionally issued these statements not as hypothetical scenarios, but as threats to make a point. Further, though not necessary for our disposition, we note that there was evidence adduced at trial—through tapes of appellant's conversations with his then-wife, Tomorro, eye-witness testimony, and physical evidence—that appellant had taken affirmative steps to carry out some of his threats, and continued to insist he was serious about carrying them out. Of course, appellant was able to attack the credibility of the State's witnesses and evidence, but it is the jury's prerogative to believe whom it wishes.

We have outlined relevant State evidence regarding the other elements of the offense in the previous section. It is not so weak to render the verdict clearly wrong or manifestly unjust. Neither was appellant's evidence so strong so that the standard of proof could not be met. Examining all of the evidence we have outlined, it is factually sufficient.

### B. Threat Against Loretta Marion

■■■ As with the threat against Judge Hufstetler, appellant provided testimony from numerous witnesses indicating he is simply a "pop off," was emotionally upset—though not legally insane—and would never act on one of his threats. We have already addressed the problems with these arguments above. However, we note that

appellant continuously insisted to Tomorro and to inmates that he wanted to kill Ms. Marion. Further, when Tomorro asked him about a receipt for gasoline purchased in Texas, appellant told her that while she may have thought he was not serious about his threat to kill Ms. Marion, she was wrong. He then told Tomorro to bring a gun if she could get him out of jail.

At trial, appellant offered reasons for why he would have been in Texas buying gasoline, although he lived in Louisiana. Appellant worked in Texas and had a trailer there—more specifically, in the county where he purchased gasoline on that particular occasion. As before, he also introduced testimony that his statements to Ecby in the tank about hurting his wife were nothing more than tank talk and had been exaggerated. Further, he argued his statements on recordings to Tomorro were nothing more than puffing. Yet, we note again that intent to carry out a threat is not an element of the offense. While the evidence offered to show appellant had actually begun to carry out a threat strengthens the case for intent, it is not necessary. The fact that appellant continued to insist he was serious is sufficient to show his intent to threaten. His comments surrounding the threats are enough to show it was on account of her service as a witness in the family law matter. The other elements of the crime are not in serious dispute. The jury heard sufficient evidence to support the conclusion that the State met its burden on each element of the crime.

### C. Summary

The evidence was factually sufficient to sustain appellant's convictions on both counts. The State provided evidence of each element. Appellant's witnesses did not, as we have discussed, negate those elements. Although their testimony might have been calculated to negate an element

of intent to threaten, it helped to prove that appellant actually intends to issue such threats when he is upset. The threats were to harm Judge Hufstetler and Ms. Marion in an unlawful way, and in retaliation for their service in Brazoria County in the family law matter. We overrule appellant's second issue.

### III. Venue was Proper in Brazoria County

■ In his final issue, appellant contends venue was improper in Brazoria County. Specifically, he argues that the offense did not occur in Brazoria County because he did not initially threaten anyone while he or those listening to the threats were in Brazoria County. We disagree. If one element of the crime occurred in Brazoria County, venue was proper.

■ "Offenses committed wholly or in part outside this State, under circumstances that give this State jurisdiction to prosecute the offender, may be prosecuted in any county in which the offender is found or in any county in which an element of the offense occurs." Tex.Code Crim. Proc. Art. 13.01. The standard for proving venue is preponderance of the evidence. See Tex.Code Crim. Proc. Art. 13.17. Additionally, our venue statutes are simply a species of codified "substantial contacts" jurisdiction. Soliz v. State, 97 S.W.3d 137, 141 (Tex.Crim.App.2003). Thus, venue will lie so long as the defendant, his conduct, his victim, or the fruit of his crime has some relationship to the prosecuting county. Id. The Legislature, through the statutes, has specified the types of contacts that satisfy the substantial contacts threshold. Id. Here, so long as one element occurred in Brazoria County, then there are substantial contacts. See id.; Tex.Code Crim. Proc. Art. 13.01.

As we noted earlier, the elements of retaliation are (1) intentionally or knowingly, (2) threatening, (3) to harm another, (4) by an unlawful act, (5) in retaliation for or on account of the service or status of another, (6) as a public servant, witness, prospective witness, or informant.... *See* TEX. PEN.CODE § 36.06(a). Elements five and six occurred in Brazoria County for each indicted offense. Appellant's threats were based on the status and service of Judge Hufstetler and Ms. Marion, which they attained or fulfilled in Brazoria County.

Appellant has argued since the inception of the State's prosecution that the position we now adopt is too broad. His rule would require that he either be in Brazoria County when he made the threat—which is the case for the threats made to Ecby in the Brazoria County jail—or that the person who heard the threat be in Brazoria County. We disagree. The substantial contacts with Brazoria County are immediately apparent. It is the county with the greatest interest in prosecuting this case. Texas Penal Code section 36.06 is clearly meant to aid in the administration of justice by eliminating the hindrance of threats or intimidation. The family law matter, the judge, and the witness are all connected to Brazoria County. There is no criminal charge without the necessary facts occurring in Brazoria County. Further, our holding is not too far reaching. Under our holding, only two Texas counties could prosecute this case: Travis, where one threat was received—appellant's desired interpretation—and Brazoria, where Judge Hufstetler and Ms. Marion attained their status as public servant and witness, and performed duties leading to the threats.

Appellant has never contested that Judge Hufstetler is a judge in Brazoria County, or that Ms. Marion was a witness in Brazoria County. Because the State proved by a preponderance of the evidence that one element of the offense occurred in Brazoria County, we overrule appellant's third issue.

### Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.