**Affirmed and Opinion filed April 15, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00729-CR

---

### ROBERT MICHAEL RILEY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Cause No. 11CR2269**

---

## O P I N I O N

A jury convicted Robert Michael Riley of making a false report with the Texas Department of Family and Protective Services in violation of section 261.107(a) of the Texas Family Code. Tex. Fam. Code Ann. § 261.107 (West 2014). The trial court sentenced Riley to confinement for sixty (60) days in the county jail. The sentenced was suspended and Riley was placed on community supervision for twelve months. Riley appeals claiming venue was not proper in

Galveston County, the evidence was insufficient to support his conviction, and the trial court erred in overruling his motions for a mistrial. We affirm.

## I. BACKGROUND

Appellant was married to Kristi Rekoff from 1996 to 2000. Following their divorce, they continued to live together until 2008. In 2005, Kristi began caring for C.R. C.R. lived with Kristi and appellant until May 2008, when they stopped living together. Kristi adopted C.R. in January 2010. Kristi married Kevin Rekoff in October 2010. On April 19, 2011, appellant made an anonymous call to the Texas Department of Family and Protective Services concerning C.R. Subsequently, the Child Protective Services ("CPS") office in Galveston County investigated C.R.'s family and determined that there was no abuse or neglect. The administrative closure of the CPS case led to a criminal investigation and charges were filed against appellant for filing a false report.

## II. SUFFICIENCY OF THE EVIDENCE

Because we must examine and decide a challenge to the sufficiency of the evidence even if the conviction must be reversed on other grounds, we initially address appellant's second issue. *See McFarland v. State*, 930 S.W.2d 99, 100 (Tex. Crim. App. 1996). When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The jury is the exclusive judge of the credibility of witnesses and the weight to be given to the evidence. *See Isassi,* 330 S.W.3d at 638. Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Id.* We draw

2

all reasonable inferences from the evidence in favor of the verdict. *Id.* This standard applies to both circumstantial and direct evidence. *Id.* Whether a defendant acted intentionally or knowingly must usually be inferred from the facts and circumstances. *Lima v. State*, 107 S.W.3d 774, 776 (Tex. App.—Corpus Christi 2003, no pet.) (*citing Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991)). The jury may infer intent or knowledge from any facts in evidence that tend to prove the existence of such a culpable mental state. *Id.*

Appellant argues the evidence is legally insufficient to support his conviction for two reasons. First, appellant claims there was no report "as provided by Chapter 261" because he did not allege abuse or neglect. Section 261.107(a) provides "[a] person commits an offense if, with the intent to deceive, the person knowingly makes a report as provided in this chapter that is false." Tex. Fam. Code Ann. § 261.107(a). The elements of this offense are:

(1)   a person;

(2)   with intent to deceive;

(3)   knowingly makes a Chapter 261 report;

(4)   that is false.

Appellant reported Kristi and Kevin were heavy drinkers and smoked marijuana on a regular basis. He further reported that Kristi heavily used prescription drugs. Appellant reported that Kristi's adult daughter, Taryn, occasionally takes care of C.R. and that Taryn was arrested on drug charges about a year earlier. According to appellant's report, Taryn was arrested because she was with someone selling drugs, does drugs, smokes marijuana on a daily basis, and is a heavy drinker. Appellant argues that because he reported that he did not know how the drinking and drug use affected C.R., he was not reporting abuse.

3

Appellant also asserts that the matters he reported did not rise to the level of neglect.

Chapter 261 defines report as "a report that alleged or suspected abuse or neglect of a child has occurred or may occur." Tex. Fam. Code Ann. § 261.001(6) (West 2014). "Abuse" is defined to include "[t]he current use by a person of a controlled substance as defined by Chapter 481, Health and Safety Code, in a manner or to the extent that the use results in physical, mental, or emotional injury to a child." Tex. Fam. Code Ann. § 261.001(1)(I) (West 2014). "Neglect" includes "placing a child in or failing to remove a child from a situation that a reasonable person would realize requires judgment or actions beyond the level of maturity, physical condition, or mental abilities and results in bodily injury or a substantial risk of immediate harm to the child." Tex. Fam. Code Ann. § 261.001(4)(B)(i) (West 2014). These terms "are defined broadly and nonexclusively." *In the Interest of E.C.R.*, 402 S.W.3d 239, 246 (Tex. 2013).

Appellant reported daily drug use and heavy drinking by Kristi and Kevin. A rational fact finder could have found that a five-year old child in the care of adults who drink heavily, smoke marijuana, and take heavy doses of prescription drugs, all on a daily basis, is in a situation that is beyond their level of judgment or maturity and results in a substantial risk of immediate harm. Based on that evidence and any reasonable inferences from it, the jury was entitled to believe appellant was making a report of neglect under Chapter 261. *See Blackmon v. State,* 02-11-00153-CR, 2012 WL 1130421, *1-2 (Tex. App.—Fort Worth Apr. 5, 2012, pet. ref'd) (mem. op., not designated for publication) (holding the jury was entitled to find the defendant was attempting to report an assault when she made a false report that a woman was screaming and she thought the woman's husband was "beating on her," that the woman was "being beaten again," and that "a man

4

over there be whooping on her."). We therefore reject appellant's argument that he did not make a report under Chapter 261.

Next, appellant claims there was insufficient evidence to establish that he knew the information he reported was false. Appellant asserts the State failed to prove that he knowingly made a false report because there was uncontroverted evidence that he believed Kristi and Kevin were using drugs.

In his brief, appellant argues that he relied on what he was told by his attorney, Alan Daughtry,[1] and therefore did not know the information was false. Daughtry testified that it was appellant who brought up the issue of drugs and alcohol. Daughtry "asked around and got a feeling that there's a reputation for marijuana" and he relayed that information to appellant. According to Daughtry, appellant was concerned about C.R. being abandoned or neglected and he testified that he felt appellant "believed it." Daughtry also testified, "I wouldn't be shocked if he got a kick out of it . . . ."

At trial, appellant testified to the following:

- he knew they were drinking because Kristi had told him;

- he and Kristi had smoked together;

- he had heard that Kristi and Kevin smoked;

- Kristi told him that they smoked to relax;

- Kristi told him that Kevin was a wine connoisseur;

- he smoked marijuana with Kristi on New Year's Eve of 2009;

- in 2009, Heather Nelson told him that Kevin smoked marijuana;

---

[1] Mr. Daughtry was not representing appellant in this criminal case.

5

- he had been with Kristi while she was "taking Wellbutrin and taking Lexapro and then moving on to Adderall;"

- he would disagree with Heather Nelson that Kristi did not abuse prescription drugs;

- the last time appellant spoke with Heather Nelson was the end of 2009; and

- appellant did not know Kevin.

At trial, appellant did not testify that his report was based upon information received from Daughtry. Even if it were, what Daughtry testified to having told appellant does not support the report actually made by appellant. Appellant's own testimony at trial does not support the report he made and reveals he claimed to base the report on information that was approximately two years old. Nothing in appellant's report suggested to the listener that the information was stale.

More importantly, the evidence adduced at trial does not support appellant's allegations in the report. There is no evidence in the record before this court that Kristi was heavily using prescription drugs; that Kristi and Kevin were heavy drinkers; or that Kristi and Kevin smoked marijuana on a daily basis. Further, there is no evidence in the record before this court that Taryn smokes marijuana on a daily basis or is a heavy drinker. Accordingly, we conclude the evidence was sufficient to allow the jury to find beyond a reasonable doubt that appellant knowingly made a false report.

In his brief, appellant also states "it logically follows that if [appellant] did not believe the information to be false, he did not intend to deceive CPS." Because appellant's brief makes no further argument or elaboration with regard to this contention, we need not address it. *See* Tex. R. App. P. 38.1(i). We note, however, there was conflicting evidence regarding appellant's motives for filing a false

6

report.  There was testimony from appellant, Mary Ellen Riley (appellant's mother) Daughtry, and Michael Villasana (appellant's attorney[2]), that the report was made because appellant was concerned about C.R.  However, testimony from Kristi and appellant's former girlfriend, Kim Kienast, as well as the video of appellant's interview with the officer investigating the false report, Marty Grant, provided evidence from which the jury could have found the report was made to harass Kristi, and not out of concern for C.R.

The jury may infer intent or knowledge from any facts in evidence that tend to prove the existence of a culpable mental state.  *See Lima*, 107 S.W.3d at 776.  In this case, the jury judged the credibility of the witnesses, determined the weight to be given to their evidence, and resolved the conflicts in the evidence against appellant.  We conclude the evidence was sufficient to allow the jury to find beyond a reasonable doubt that appellant made the false report with intent to deceive.

After reviewing all the evidence in a light most favorable to the verdict, we conclude that a rational trier of fact could have found the elements of the offense beyond a reasonable doubt.  We hold the evidence is legally sufficient to support appellant's conviction.  Appellant's second issue is overruled.

### III.  VENUE

In his first issue, appellant claims the trial court erred in denying his motion for a directed verdict based on improper venue because no element of the offense occurred in Galveston County.[3]  Appellant claims that because he made the report

---

[2] Mr. Villasana was not representing appellant in this criminal case.

[3] A motion for directed verdict specifically challenging the proof of venue timely raised and preserved the issue for appeal.  *Black v. State,* 645 S.W.2d 789, 791 (Tex. Crim. App. 1983).

by phone call from Harris County to the Department in Travis County, no element of the offense occurred in Galveston County.

The State is required to prove that the prosecution is being brought in the proper venue pursuant to Chapter 13 of the Texas Code of Criminal Procedure. *Ex parte Watson,* 601 S.W.2d 350, 352 (Tex. Crim. App. 1980). The general rule provides that "if venue is not specifically stated, the proper county for the prosecution of offenses is that in which the offense was committed." Tex. Code Crim. Proc. Ann. art. 13.18 (West 2005). In addition, special venue statutes have been enacted. *See* Tex. Code Crim. Proc. Ann. arts. 13.01–13.30 (West 2005 & Supp. 2013). "These special venue statutes have been enacted for various reasons, such as: 1) the difficulty of proving precisely where the offense was committed; 2) the location where evidence of the crime is found; 3) the effect that a crime may have upon several different counties; or 4) the effect that the actor may have upon various counties." *Soliz v. State,* 97 S.W.3d 137, 141 (Tex. Crim. App. 2003). These statutes "are a species of codified 'substantial contacts' jurisdiction; thus, for venue to lie, the defendant, his conduct, his victim, or the fruits of his crime must have some relationship to the prosecuting county." *Id.* By enacting the special venue statutes, the Legislature "specified the types of contacts that satisfy this 'substantial contacts' threshold for various offenses." *Id*. As long as one element of the offense occurred in the county in question, there are substantial contacts so that venue will lie. *See Lebleu v. State*, 192 S.W.3d 205, 212 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Venue in a criminal case need be proven only by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art. 13.17; *Murphy v. State*, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003). Proof of venue may be established by direct or circumstantial evidence, and the jury may draw reasonable inferences from the

8

evidence. *Black v. State,* 645 S.W.2d at 790; *Edwards v. State,* 97 S.W.3d 279, 285 (Tex.App.—Houston [14th Dist.] 2003, pet. ref'd). The evidence is sufficient if the jury may reasonably conclude that the offense was committed in the county alleged. *Rippee v. State,* 384 S.W.2d 717, 718 (Tex. Crim. App. 1964).

There is no special venue statute applicable to the case at bar. Thus we must determine whether an element of the offense occurred in Galveston County. *See Lebleu*, 192 S.W.3d at 212. There was evidence introduced that the phone call was placed from Harris County and it was undisputed that the call was received in Travis County. The issue in this case is whether venue for the prosecution was limited to those two counties.

Investigation of a report of child abuse or neglect is governed by Chapter 261 of the Texas Family Code. As noted above, section 261.107(a) provides "[a] person commits an offense if, with the intent to deceive, the person knowingly makes a report as provided in this chapter that is false." Tex. Fam. Code Ann. § 261.107(a). When a report of child abuse is made, "the department . . . shall make a prompt and thorough investigation of [the] report." Tex. Fam. Code Ann. § 261.301(a) (West 2014).

The Department is a statewide agency. CPS is a division of the Department with offices in counties throughout the State. *See In the Interest of T.S.*, 14-05-00348-CV, 2006 WL 1642218, at *2 n.5 (Tex. App.—Houston [14th Dist.] June 15, 2006, no pet.) (mem. op.) (citing Tex. Fam. Code Ann. § 264.404 (West 2014)); *see also In the Interest of M.G.*, 14-09-00136-CV, 2009 WL 3818856, at *4 (Tex. App.—Houston [14th Dist.] Nov. 17, 2009, no pet.) (mem. op.). Nagila Bright, an investigator for CPS through the Department, testified that her CPS office in Galveston County receives reports "through statewide intake" by "the Intake Division." Thus the Department acts as an agent of receipt for the local

9

branch of CPS that will conduct the initial investigation. We therefore hold a Chapter 261 report is "made" in the county of the CPS office that receives notification from the Department. Here, that office was in Galveston County. Accordingly, we hold Galveston County to be a proper county for the prosecution of the offense. *See* Tex. Code Crim. Proc. Ann. art. 13.18.

Although no court in this State has addressed this precise issue, we find support for our decision in *Soliz* and *Lebleu*. In *Soliz,* the Texas Court of Criminal Appeals recognized four factors that offer useful guidance when a defendant claims improper venue: (1) the site of the crime; (2) the crime's elements and nature; (3) where the effects of the criminal conduct are felt; and (4) the chosen venue's suitability for accurate factfinding. *Id.*

The site of the crime includes the location from which the phone call was placed, the location it was received, and, by incorporation of Chapter 261 in the offense, the location to which the report is referred. The elements of the crime incorporate Chapter 261 which mandates referral to and investigation by the department. The nature of the crime is the waste of resources and the harassment of those accused that is caused by false reports. The effects of the criminal conduct were clearly felt in Galveston County where the person falsely accused of child abuse or neglect resided and where the investigation occurred. The alleged abuse or neglect occurred in Galveston County thus it was a necessary site for accurate factfinding. Accordingly, consideration of these factors supports a finding that venue was proper in Galveston County.

In *Lebleu*, the defendant was convicted of retaliation against a judge and a witness. *Lebleu,* 192 S.W.3d at 207. On appeal, the defendant argued venue was improper in Brazoria County because he did not initially threaten anyone while he or those listening to the threats were in Brazoria County. *Id.* at 213. This court

10

held elements of the offense occurred in Brazoria County, where the complainants attained their status as public servant and witness, and performed duties leading to the threats. *Id.* We disagreed with the defendant's argument that the court's position was too broad noting that "[t]he substantial contacts with Brazoria County are immediately apparent. It is the county with the greatest interest in prosecuting this case."

In the case at bar, the substantial contacts with Galveston County are immediately apparent. Neither Harris County nor Travis County had as great an interest in prosecuting this case. Indeed, the county with the greatest interest in prosecuting a false report made under Chapter 261 will generally be the county in which resources were spent on the unnecessary investigation. Because our interpretation limits prosecution of a false report under Chapter 261 to those counties from which the report was made, to which the report was made, and to which the report was referred, we conclude it is not too far reaching.

Moreover, even if venue was not proper in Galveston County, the error is not reversible. The failure to prove venue is non-constitutional error subject to a harm analysis. *Schmutz v. State*, No. PD-0530-13, 2014 WL 300810, at *3-6 (Tex. Crim. App. Jan. 29, 2014). We disregard non-constitutional error unless it affected a substantial right. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict or the fact finder's decision. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). A criminal conviction should not be overturned for non-constitutional error if the reviewing court has a fair assurance that the error did not influence the fact finder, or had slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

11

In assessing the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla*, 78 S.W.3d at 355. We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Id.* at 355-56.

The issue of venue concerns only the geographic location where the case may be tried. *Boyle v. State*, 820 S.W.2d 122, 139–40 (Tex. Crim. App.1989). Venue is not synonymous with jurisdiction, which is the power of the court to hear and decide the case. *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. 1981). The trial court had jurisdiction to hear and determine the case even if venue did not lie in that court. *Id.*

We conclude that, on this record, no harm befell appellant from the State's failure to prove venue as alleged. There is no evidence that the State was forum shopping, that appellant was inconvenienced by having to answer the charges in Galveston County, that appellant was misled by the venue allegation, that appellant was prevented from presenting a defense, that the Galveston County trial was unfair or the jury or trial court less than impartial. Galveston County jurors had a natural interest in the subject matter, and Galveston County has a substantial connection to the case since the report was made concerning a child residing in Galveston County and was investigated in Galveston County. Since venue is not an element of the offense, the error did not prejudice the jurors' decision making process. An examination of the record as a whole gives us fair assurance that the

error did not affect appellant's substantial rights. For these reasons, appellant's first issue is overruled.

## IV.   DENIAL OF MOTIONS FOR MISTRIAL

In his third issue, appellant asserts the trial court erred overruling his three motions for a mistrial. Appellant's first motion for mistrial was made after the following exchange on cross-examination of Kim Kienast.

> Q.    [Defense counsel] So, he was running another business, a third business?
>
> A.    Yes.
>
> Q.    Isn't that what people are supposed to do to make a living, run a business or go get a job?
>
> A.    Sure. I guess. He said he wasn't - - I mean, he wasn't supposed to open the gambling business he opened, but he did during the lawsuit.

Appellant's alleged gambling business was the subject of a motion in limine. Defense counsel asked to approach the bench and then moved for a mistrial.

> [Defense Counsel]:  Judge, I'd make a Motion for Mistrial based on her bringing in the gambling house. Clearly it's been one of the things we were told to keep away from.
>
> THE COURT:  That motion is denied.

After further discussion as to whether defense counsel had opened the door the following exchange occurred.

> [Defense Counsel]:  Can you get the Government to talk to her and tell her to not mention this again?
>
> THE COURT:  I assumed you probably already had.
>
> If you're asking me to instruct the jury to disregard that last answer, I will do that.
>
> [Defense Counsel]:  Here's what my question was . . .

Defense counsel did not ask the trial court for an instruction to disregard.

13

Motions in limine do not preserve error, whether granted or denied. *See Webb v. State,* 760 S.W.2d 263, 275 (Tex. Crim. App. 1988). A ruling on a motion in limine is not on the merits but a ruling regarding administration of the trial. *See Harnett v. State*, 38 S.W.3d 650, 655 (Tex.App.—Austin 2000, pet. ref'd). Even if there has been a violation of the ruling on the motion in limine, a party must object to the admission or exclusion of evidence or other action in order to preserve error for appeal as to the evidentiary ruling. *Id.*

The record reflects no objection was made to the admission of evidence that appellant had opened a gambling business. Accordingly, nothing is presented for our review. *See* Tex. R. App. P. 33.1.

The second motion for mistrial occurred during the direct testimony of Kevin Rekoff.

> Q. [The State] Did you at any time talk to him about this case and about it being a possible crime?
>
> A. Yes ma'am.
>
> Q. And when would that have been?
>
> A. When I went down to the League City Police Department to speak about another matter related to the same parties, I spoke to them and - -

Defense counsel asked to approach the bench and then moved for a mistrial on the grounds that Kevin "just insinuated he went down there to file other charges on [appellant]" and "It's against the Motion in Limine."

As noted above, motions in limine do not preserve error. Additionally, the video-taped interview of appellant by Marty Grant had already referenced "another matter," appellant's claims against Kristi concerning a credit card that appellant had reported to the police. There is no reason to believe the jury would have assumed Kevin was not referring to that matter. Accordingly, the trial court did

not abuse its discretion by denying appellant's second motion for mistrial.

Appellant's third motion for mistrial was made during the direct testimony of Sue Young, Kristi's mother.

> Q. [The State] Can you describe for the jury any specific instance where you might have caught him in a lie and what he would have said?
>
> A. Yes.

Defense counsel then asked to approach the bench and moved for a mistrial. Defense counsel also asked that if his motion was denied, "for a limited instruction and ask them to disregard. . ." The trial court denied the motion for mistrial and instructed the jury to disregard the last question.

After reviewing the question posed we conclude that the conduct here was certainly less prejudicial than other incidents found to be curable by a similar instruction. *See Young*, 137 S.W.3d at 67–68 (holding that venireperson's statement in aggravated sexual assault of a child case that in twenty-five years' of social work she had never had a child lie about being sexually assaulted did not warrant a mistrial because an instruction, had it been requested, would have cured any prejudice from the remarks); *Long v. State*, 823 S.W.2d 259, 267 n. 9 (Tex. Crim. App. 1991) (prosecutor's argument that used an Adolf Hitler analogy, implying defendant was evil, could have been cured by an instruction to disregard). We therefore hold that any prejudicial impact caused by the question was cured by the court's instruction to disregard. Accordingly, we hold the trial court did not abuse its discretion in failing to grant appellant's third motion for mistrial.

For these reasons, appellant's third issue is overruled.

## V. CONCLUSION

Having overruled all of appellant's issues, the judgment of the trial court is affirmed.


/s/    Sharon McCally
Justice


Panel consists of Justices McCally, Busby, and Donovan.
Publish – Tex. R. App. P. 47.2(b).